BEARDEN *v.* BEARDEN.

5-2544                                    353 S. W. 2d 181

Opinion delivered January 15, 1962.

[Rehearing denied February 19, 1962.]

*George F. Edwardes,* for appellant.

*Dennis K. Williams* and *LeRoy Autrey,* for appellee.

PAUL WARD, Associate Justice. This is an appeal from an order of the trial court which took a 4 1/2-year-old boy from his mother and gave custody to his father.

Dorothy (appellant) and Robert L. Bearden (appellee) became the parents of a boy, Robert Allen, on April 15, 1956, and they were divorced by decree dated June 18, 1958.

By that decree custody of the boy was given to his mother nine months of each twelve months (September to May inclusive) and the father was given custody for the rest of the time. The decree further provided: Robert L. to pay Dorothy $50 per month (for the nine months she had custody) for the support of the boy until he became 21 years old; he was to pay her individually $150 per month until June 8, 1963; he was to repay $7,000 which he had borrowed from her; and he was to pay the ''expenses of safe transportation of the child to and from his mother''. All the above provisions were agreed to by Mr. and Mrs. Bearden in writing and incorporated in the decree.

Sometime during the spring of 1960 relatives of Mr. Bearden, while returning from a trip to Georgia, visited the home of Mrs. Bearden in New Orleans, and, with her consent, took the boy with them to Mr. Bearden's home in Texarkana, Arkansas. On August 20, 1960 Mr. Bearden (who had previously remarried) filed suit asking ''that he be awarded the care and custody of his son, Robert Allen Bearden, subject to the right of the respondent, Dorothy Bearden, to have and visit with the child at reasonable times. . . .'' After a full hearing the trial court, on December 8, 1960, granted the relief as prayed.

Appellant now prosecutes this appeal, contending the evidence fails to show such a change in conditions or other facts as to justify the change of the original decree. After a careful study of the record we have concluded

appellant's contention must be sustained. Set out below is what we think is a fair summation of what the pertinent testimony reveals.

Mr. Bearden runs a night club in Texarkana just as he did when he was married to Dorothy, and his present wife works in it some just as did Dorothy. Mr. Bearden and his present wife, who now have a three-month-old baby, are respectable people and could give Robert Allen a good home. They do not claim to be regular church attendants. The paternal grandparents, who have intervened, have kept Robert Allen quite a bit and would like to have him now. None of appellee's witnesses question the moral fitness of Dorothy to retain custody, and none could point out any change in conditions to justify taking custody of Robert Allen from his mother.

Dorothy resides in New Orleans where she lived when the divorce decree was rendered: She works at a respectable place similar to the place now operated by Mr. Bearden; she lives with her sister (who also has a young son) in a comfortable and respectable apartment; she says she looks after the educational, physical and spiritual welfare of her son; she is not going to work any longer as she plans to marry a man (giving man's name) who is a printer making $130 per week; she loves her child and wants to retain his custody, and; she is willing for Robert Allen to visit his father and grandparents frequently.

Under the above state of the record we are unable to find any change in circumstance (since the original decree) which indicates it would be for the best interest of Robert Allen for the court to take him from his mother and give custody to his father.

Before a decree awarding custody of a child is modified there must be proof showing a justification for a change. See: *Nelson* v. *Nelson,* 146 Ark. 362, 225 S. W. 619. This rule has been adhered to in many later decisions of this Court. The burden to show such change in circumstances is on the one seeking the change. See: *Parks* v. *Crowley,* 221 Ark. 340, 253 S. W. 2d 561, and

*Duncan* v. *Crowder,* 232 Ark. 628, 339 S. W. 2d 310. We do not think this burden has been met in this case.

In addition to all that has been said heretofore, we also point out that this Court has often shown a preference to the mother where the custody of a child of tender age is involved. See: *Gibson* v. *Gibson,* 156 Ark. 30, 245 S. W. 32; *Taylor* v. *Taylor,* 163 Ark. 229, 259 S. W. 395; *Greer* v. *Greer,* 193 Ark. 301, 99 S. W. 2d 248; *Parks* v. *Crowley,* 221 Ark. 340, 253 S. W. 2d 561; and *Duncan* v. *Crowder,* 232 Ark. 628, 339 S. W. 2d 310. It seems to us this preference would apply with even more force where, as here, it is sought to take custody from the mother after it has once been awarded.

It is our conclusion therefore that the order of the trial court should be, and it is hereby, reversed.

McFADDIN, J., dissents.

ED. F. McFADDIN, Associate Justice, dissenting. Child custody cases are the most difficult to decide. If we make a mistake in a land case there is other land the losing party may acquire by energy and effort; if we make a mistake in the amount of a money judgment the losing party may acquire additional money by energy and effort; but if we make a mistake in a child custody case a life may be ruined, and the child has only one life to live. So these child custody cases require great study and prayerful consideration.

The Chancellor who decided this case saw the parties and heard them testify. He was in a much better position to decide the case than we are, since we see only the printed page. At the conclusion of the testimony the Chancellor delivered a lengthy opinion. I cannot say that he was in error. The remarriage of the father makes an opening wedge of change of circumstances; and the fact that the paternal grandparents are to assist in the care of the child shows that the little boy will be given more supervision and attention here in Arkansas than is shown if he be in Louisiana. The best interest of the child is the polestar in these cases.

Not being willing to substitute my opinion obtained only from the typewritten testimony, for the conclusion of the Chancellor who saw the parties and the child, I cannot vote for a reversal.

Therefore, I respectfully dissent.